Carl M. HILL, Plaintiff-Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of
Health Education and Welfare,
Defendant-Appellee.

No. 77–1090.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 12, 1978.

Decided Feb. 16, 1979.

---

1. Retail Clerks Union, Local 298, affiliated with Retail Clerks International Association, AFL–CIO.

Jerry P. Black, Jr., University of Tennessee Legal Clinic, Knoxville, Tenn., for plaintiff-appellant.

John H. Cary, U. S. Atty., Edward E. Wilson, W. Gordon Ball, Richard K. Harris, Knoxville, Tenn., for defendant-appellee.

Before WEICK, LIVELY and MERRITT, Circuit Judges.

WEICK, Circuit Judge.

Appellant Hill has appealed to this Court from an order of the District Court denying his motion for summary judgment and granting the motion of the Secretary of Health, Education and Welfare for summary judgment in the denial of appellant's claim for black lung benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 801 *et seq.*, as amended by the Black Lung Benefits Act of 1972, 30 U.S.C. § 901 *et seq.*

On appeal Hill contends that the Secretary's practice of rereading X-rays in entitlement proceedings under the Act denies him due process of law and violates the Act. He also contends that the decision of the Administrative Law Judge and the Appeals Council that he was not entitled to benefits under the Act, because he was not totally disabled due to pneumoconiosis on or about June 30, 1973, the deadline for establishing such disability for B claims like appellant's, is not supported by substantial evidence.

Hill is 70 years of age, and is a former mine worker. He is married and is the father of two grown children. From 1948 to 1951, and from 1960 to 1970, Hill engaged in a total of eleven and one-half years of mine work. For seven years he was a tipple operator. The remaining years he weighed coal trucks, prepared payrolls, was a supply man, and substituted as a tipple operator. From 1960 to sometime in 1964 Hill worked approximately one-third of his 55- to 60-hour weeks in semi-clerical payroll and billing work. His work was performed at or near the mine, and caused him to be exposed to dusty conditions around the mine.

Hill quit working at the mine in 1970 and has not worked since that time. Shortly after quitting work he applied for and obtained an award of total and permanent Social Security disability benefits for a psychophysiological musculoskeletal reaction and for degenerative intervertebral disc disease. He had a history of arthritis which his treating physician, Dr. Bowman, diagnosed as severe osteoarthritis. Hill has also filed a third claim, namely, for workmen's compensation benefits under applicable state law.

Hill filed his claim for black lung benefits on April 22, 1971. His claim has been consistently denied. After gathering medical evidence, the Administrative Law Judge found that Hill was not totally disabled due to pneumoconiosis on or before the June 30, 1973 deadline for establishing such disability. The Appeals Council adopted this finding. Upon remand from the District Court requiring specific reasons for the rejection of certain evidence submitted by appellant's personal physician, the Appeals Council issued a written decision again denying appellant benefits. Upon review, the District Court granted summary judgment in favor of the Secretary.

The medical evidence indicates that appellant has a mild breathing impairment which occasionally becomes severe. Hill was physically examined twice, once by his personal physician, Dr. Obenour, in 1971, and the second time by Dr. White, in May, 1973. Dr. Obenour in 1971 treated him for acute bronchitis and took several X-rays between June, 1971 and December, 1973. Dr. Obenour stated that the first X-ray, taken in June, 1971, was consistent with coal workers' pneumoconiosis, category p. 1/0. He indicated "no significant changes noted" on the later X-rays. Dr. White in May, 1973, just prior to the deadline, characterized Hill's infirmity as asthmatic bronchitis. He X-rayed Hill and interpreted the X-ray as coal workers' pneumoconiosis, class 0, which is not accepted as evidence of pneumoconiosis. He stated that the infirmity, asthmatic bronchitis, prevented any mine work.

Dr. Obenour's first 1971 X-ray was reread by two physicians under contract with the Social Security Administration, one of whom was a "B" reader. Both reread the X-ray as negative for pneumoconiosis. Dr. Obenour's last X-ray of December, 1973, was also reread by a Social Security physician who indicated that the quality was poor and that the X-ray was negative for pneumoconiosis.

Appellant submitted to two pulmonary function studies, one given by his personal physician, Dr. Obenour, in 1971, and the other given approximately two and one-half years later by one Dr. Sullivan, on February 5, 1974. Both efforts failed to qualify appellant under the standards in 20 C.F.R. § 410.490(b)(1)(ii). Dr. Obenour noted in the first test in 1971 that appellant's MVV of 44 was out of proportion to appellant's other normal values, suggesting a non-pulmonary factor. In the second test in 1974 appellant produced an MVV of 103 and a FEV1 of 2.48, which were close to the 100 and 2.5 respectively that were required for qualification. Dr. Sullivan concluded that Hill had a reduced forced vital capacity of a mild to moderate degree and a reduced maximum ventilatory volume which was compatible with obstructive airway diseases of possible restrictive pulmonary process.

Only appellant testified at his hearing. He indicated that his condition fluctuates, and that he was "about normal, not severe," but that he had been severe (A. 49). He indicated that he had a bad attack of coughing in 1968, one in 1969, and one in 1970.

■ Appellant contends that the Secretary's practice of rereading X-rays by certified "B" readers, to obtain evidence in entitlement proceedings, unconstitutionally deprived him of due process of law. Under 42 C.F.R. § 37.52 an X-ray interpretation by a "B" reader is given finality for classifica-

tion purposes over interpretations by "A" readers.[1] Hill contends that a negative X-ray interpretation by a "B" reader is final in disability benefit proceedings. He contends that such reading amounts to an irrebuttable presumption which deprives him of government disability benefits that he has a right to receive.

Most due process cases involving government benefits deal, not with granting benefits, but with removing benefits.[2] The Supreme Court has allowed government entities freedom to determine who shall receive benefits and the process by which benefits are dispensed. See, e. g., Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Under the equal protection clause the Supreme Court has not yet found a fundamental right to receive subsistence payments or welfare benefits of any kind. Appellant was afforded a hearing at which he testified before a decision was made on granting benefits. He had ample opportunity to present evidence, to call witnesses, and to testify on his own behalf. The hearing procedure is in accord with due process requirements.

We do not feel that the rereading of X-rays by "A" and "B" readers per se violates due process, because we do not believe that the Secretary has exceeded the authority to process and classify hundreds of thousands of coal miners' X-rays granted in Section 203 of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 843. Section 203 required the Secretary to establish a mechanism for processing and classifying X-rays for the coal mine industry in 1969. The creation of different levels of expertise of X-ray interpretation is not expressly authorized by statute, but different levels of competence in X-ray interpretation would seem to be an almost inevita-

1. "B" readers must demonstrate additional proficiency in the use of the ILO–U/C Classification system by taking and passing a specially designed proficiency examination given on behalf of or by the Appalachian Laboratory for Occupational Respiratory Diseases (ALFORD). 42 C.F.R. § 37.51.

2. See, e. g., Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (Social Security welfare and disability benefits); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (driving license); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (subsistence payments to indigent individuals).

ble consequence of processing and classifying the large number of X-rays required by statute. The use of "A" and "B" readers in black lung disability entitlement proceedings under the Act, as amended in 1972, has been criticized,[3] but there is no evidence that "B" reader interpretations are binding outside the Secretary's internal classification system. In disability benefit entitlement proceedings the Secretary has been required to consider all pertinent evidence, and his determination has been set aside only when it has not been supported by substantial evidence. We do not believe that the use of "A" and "B" reader interpretations in black lung disability benefit entitlement proceedings *per se* has denied appellant, or miners like him, due process of law in violation of the Fifth Amendment.[4]

Appellant contends that the Administrative Law Judge, the Appeals Council, and the District Court all erroneously denied him benefits under the Act, as amended.

■ The underlying purpose to permit recovery under the Act, as amended, is the showing of actual total disability due to pneumoconiosis. 30 U.S.C. § 921(a); 20 C.F.R. § 410.410. Pneumoconiosis is a slowly progressive disease and its incidence increases for miners who have worked for more than fifteen years.[5] Because the disease often does not clearly appear on X-ray or ventilatory data certain presumptions

were established in the Act to aid miners, who were totally disabled due to pneumoconiosis, in proving their claims,[6] especially miners with more than fifteen years' work experience.[7]

■ The findings of fact by the Administrative Law Judge and the conclusions of the Secretary will be upheld when they are supported by substantial evidence. 30 U.S.C. § 923(b); 42 U.S.C. § 405(g).

The medical evidence tends to show that appellant has a mild breathing impairment which occasionally becomes severe. His personal physician, Dr. Obenour, began treating him for acute bronchitis in 1971. Dr. Obenour interpreted a series of X-rays between 1971 and 1973 as showing simple pneumoconiosis. On the other hand, Dr. White also personally examined appellant and x-rayed him. He concluded that the X-ray did not show pneumoconiosis, and that appellant was suffering from asthmatic bronchitis. Under the regulations in force when appellant filed his claim, a showing stronger than asthmatic bronchitis, such as pneumoconiosis, massive pulmonary fibrosis, or silicotuberculosis, is necessary. 20 C.F.R. § 410.401(b). Appellant did not qualify under either the 1971 or the 1974 ventilatory test. Two doctors reread a 1971 X-ray, one reread a 1973 X-ray, and all three found no evidence of pneumoconiosis.

**3.** H.R.Rep. No. 151, 95th Cong., 2d Sess., 20, *reprinted in* [1978] U.S.Code Cong. & Admin. News, pp. 465, 484:

Both the Department of Health, Education, and Welfare and the Department of Labor have (without legislative direction) established X-ray quality control procedures under which government contract radiologists provide their own interpretations of X-rays submitted in connection with black lung claims. This procedure has elicited deep resentment among claimants, who believe strongly that the government readers are utilized solely for the purpose of denying claims.

While the Committee does not concur in this belief, it is concerned that this procedure alone has done more to destroy the credibility of the Federal government's administration of this program among miners and widows than any other factor. The Committee does agree with the statement of Dr. Edgar L. Dessen, chairman of the Task Force on Pneu-

moconiosis of the American College of Radiology that "we would doubt that radiology will become a statistically exact science."

**4.** *See Gober v. Mathews,* 574 F.2d 772 (3d Cir. 1978).

**5.** See S.Rep. No. 743, 92d Cong., 2d Sess., 13, *reprinted in* [1972] U.S.Code Cong. & Admin. News, pp. 2305, 2316–17.

**6.** 30 U.S.C. §§ 921(c)(3), (4); 20 C.F.R. §§ 410.-414, 418, 490.

**7.** 30 U.S.C. § 921(c)(4); 20 C.F.R. §§ 410.-414(b), (c), 410.490(b)(1)(ii). *See e. g., Singleton v. Califano,* 591 F.2d 383 (6th Cir. 1978); *Gastineau v. Mathews,* 577 F.2d 356 (6th Cir. 1978); *Prokes v. Mathews,* 559 F.2d 1057 (6th Cir. 1977); *Morris v. Mathews,* 557 F.2d 563 (6th Cir. 1977); *Ansel v. Weinberger,* 529 F.2d 304 (6th Cir. 1976).

 It was the function of the Secretary, and not of the Court, to resolve conflicting interpretations of the X-rays by the medical experts. He has performed that function and it has not been shown to be arbitrary, unreasonable, or an abuse of discretion. This met with the approval of the District Judge, and we likewise approve.

Only appellant testified at this hearing. He did not call other witnesses. By his own testimony appellant indicated that his condition fluctuates, and that he was "about normal, not severe," but that he had been severe.

The Administrative Law Judge had the benefit of observing appellant at the hearing and he also had all of the medical evidence before him. He determined that appellant did not establish total disability due to pneumoconiosis or presumed pneumoconiosis. The District Court reviewed all of the medical evidence. The Court noted that Dr. Bowman in September, 1970, declared appellant totally disabled because of rather severe osteoarthritis and bilateral inguinal hernia, and that under 20 C.F.R. § 410.425 a miner is totally disabled by pneumoconiosis only if it is the primary reason for his inability to work.[8] Medical impairments other than pneumoconiosis may not be considered.

 We believe that the decision of the Administrative Law Judge, which was adopted by the Appeals Council and approved by the District Court, is supported by substantial evidence, and is not clearly erroneous. We also agree with the District Court that appellant did not establish his entitlement to any presumptions.

We note that Congress recently supplemented the Federal Coal Mine Health and Safety Act of 1969 by passing the Black Lung Benefits Reform Act of 1977, Pub.L. No.95–239, 92 Stat. 95, signed into law March 1, 1978. Section 15 of the new amendments (30 U.S.C. § 945) specifically provides a mechanism for reviewing pending and denied part B claims like appellant's under new standards contained in the amendments. Appellant may resubmit his claim for review, either to the Secretary of Health, Education and Welfare or to the Secretary of Labor. The new standard in Section 5 of the amendments (30 U.S.C. § 923(b), as amended), appears to be less stringent than the standard in the old HEW regulations located in 20 C.F.R. § 410.101 *et seq.* Review under the 1977 Act is available to appellant by making a simple request therefor to either Secretary. *Treadway v. Califano*, 584 F.2d 48, 51 (4th Cir. 1978).

The judgment of the District Court is affirmed.

---

**8.** See *Gastineau v. Mathews, supra,* fn. 7.