Mike ELKINS, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,
Defendant-Appellee.

No. 80–3287.

United States Court of Appeals,
Sixth Circuit.

Argued July 9, 1981.
Decided Aug. 27, 1981.

Franklin W. Kern, Charleston, W. Va., William A. Watson, Middlesboro, Ky., for plaintiff-appellant.

Patrick Molloy, U.S. Atty., Dell Littrell, Asst. U.S. Atty., Lexington, Ky., for defendant-appellee.

Before LIVELY and JONES, Circuit Judges, and WISEMAN, District Judge.*

PER CURIAM.

Mike Elkins, a 67-year-old former coal miner, appeals from the judgment of the district court granting the motion of the Secretary of Health and Human Services for summary judgment and dismissing Elkins' claims for black lung disability benefits under Part B, Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 921 et seq., and denying attorney fees. We affirm.

I.

On September 15, 1972, Elkins filed an application for black lung benefits alleging disability due to pneumoconiosis. The Social Security Administration denied this application initially and upon reconsideration.

On December 1, 1976, a hearing was held before an administrative law judge (ALJ). At the hearing, Elkins testified to experiencing breathing difficulties. He was hospitalized in 1975 for emphysema. Other medical evidence adduced at the hearing demonstrated that on March 7, 1973 and on February 3, 1975 Doctors Norman Adair and William Ellswood read x-rays of Elkins and found coal miners' pneumoconiosis, categories 1/1s and 2/3q and category 1/2p, respectively. The March 7, 1973 x-ray was reread negatively by Doctors W. Lynell Murphy and Mordecai Halpern, Board-certified "B" readers. Additionally, on January 29, 1973 and February 3, 1975, Doctors Paul VanLith and Dominic Gaziano conducted pulmonary function studies. Dr. VanLith interpreted the January 29 test to show normal spirometry and Doctor Gaziano reported that the February 3 test indicated considerable variability of effort showing a mild restrictive ventilatory impairment. Moreover, lay testimony from Elkins's employer suggested that Elkins's position as an off-set printer for a bank branch did not involve much physical exertion.

On December 23, 1976, the ALJ decided that though Elkins had been a coal miner for more than ten years, the preponderance of the credible medical evidence did not establish pneumoconiosis prior to July 1, 1973. Therefore, Elkins was not totally disabled within the meaning of section 411 of the Act, 30 U.S.C. § 921.

On March 14, 1977 Elkins sought judicial review of the Secretary's decision denying him black lung disability benefits.

On November 2, 1978, Elkins was notified that the Secretary approved his application for black lung benefits due to a recent change in the law: the enactment of the Black Lung Benefits Reform Act of 1977 (the Reform Act), Pub.L.No. 95–239, 92 Stat. 95 (Mar. 1, 1978) which liberalized the award of benefits retroactively to January 1, 1974. On this notice, the Secretary stated that any questions should be directed to the Secretary of Labor and that the Secretary's approval of benefits under the Reform Act did not affect Elkins's pending action for pre-Reform Act benefits.

Shortly thereafter, Elkins moved the district court to order the Secretary "to demonstrate the distinction in fact and law between the claim for earlier benefits and those now granted . . . ." Elkins also moved the district court to approve attorney's fees for the legal representation that led to the award of benefits under the Reform Act. The district court referred these matters to a magistrate who recommended (1) the affirmance of the Secretary's denial of pre-Reform Act benefits and the granting of the Secretary's motion for summary judgment, (2) the denial of Elkins's motion to order the Secretary to

---

* The Honorable Thomas A. Wiseman, Jr., United States District Judge, Middle District of Tennessee, sitting by designation.

specify the basis for the decision to grant benefits under the Reform Act, and (3) the denial of attorney's fees. On February 27, 1980, the district court adopted the magistrate's recommendations and granted the Secretary summary judgment.

## II.

On appeal, Elkins argues that the Secretary's decision denying him pre-Reform Act benefits was not based upon substantial evidence. We disagree.

Our review of the Secretary's findings of fact is limited to whether substantial evidence on the record as a whole supports these findings. 30 U.S.C. § 923(b); 42 U.S.C. § 405(g). *Moore v. Califano,* 633 F.2d 727 (6th Cir. 1980); *Carroll v. Califano,* 619 F.2d 1157 (6th Cir. 1980); *Back v. Califano,* 593 F.2d 758 (6th Cir. 1979). If the Secretary's findings are supported by substantial evidence then we must affirm the Secretary's decision even though as triers of fact we might have arrived at a different result. *Moore v. Califano, supra,* at 729. Furthermore, we may not abrogate the Secretary's function to evaluate and resolve conflicting medical testimony. *Ross v. Richardson,* 440 F.2d 690, 694 (6th Cir. 1971).

In the present case, the ALJ found that in light of objective medical evidence Elkins failed to establish total disability due to pneumoconiosis under the 1972 amendments to the Federal Coal Mine Health and Safety Act of 1969. Under the 1972 amendments (the Black Lung Benefits Act of 1972, 30 U.S.C. § 901 *et seq.*), Congress expected the Secretary to promulgate interim evidentiary rules and disability evaluation criteria to effectuate the prompt and vigorous processing of black lung claims and to reduce the substantial backlog of claims generated by the original legislation. S.Rep. No. 92–743, 92d Cong., 2d Sess. 18–19, reprinted in [1972] U.S. Code Cong. & Ad. News 2305 *et seq.* The Secretary set forth these interim criteria in 20 C.F.R. § 410.490. Under section 410.490(b), a coal miner who filed a claim for benefits before July 1, 1973 and who was engaged in coal mining for at least ten years will be presumed totally disabled if a chest x-ray, biopsy, autopsy, or pulmonary function studies establish pneumoconiosis.

We agree with the ALJ that even under the liberal criteria of the interim rules, Elkins has not established disability due to pneumoconiosis by a preponderance of the credible medical evidence. Doctor Adair's reading of the March 7, 1973 x-ray was discredited by Doctors Murphy and Halpern. In addition, the January 29, 1973 pulmonary function test revealed normal spirometry. On these facts, we believe that the ALJ properly declined to consider the February 3, 1975 x-ray and pulmonary function study in determining whether Elkins was disabled prior to July 1, 1973. Consequently, we conclude that substantial evidence supports the ALJ's decision.

Elkins further argues that the district court erred in refusing to order the Secretary to specify with particularity the reasons for the award of benefits under the Reform Act. The district court reasoned that the Reform Act and the regulations promulgated thereto were not applicable to Part B claims still pending in the courts. *Back v. Califano, supra,* at 763–764. Therefore, the district court opined that the new regulations had no bearing on this case. We agree.

We recognized on several occasions that the new regulations issued by the Secretary of Labor pursuant to the Reform Act are less stringent than the regulations of the Secretary of Health, Education and Welfare under the old Act. *Moore v. Califano, supra,* at 731–732; *Back v. Califano, supra,* at 763; *Hill v. Califano,* 592 F.2d 341, 346 (6th Cir. 1979). In fact, the Secretary of Labor has expressly stated that the new regulations provide "additional standards, not available in the interim adjudicatory rules [of the Secretary of HEW], by which a claimant can take advantage of a presumption of total disability or death due to pneumoconiosis . . . ." 20 C.F.R. § 727.200. Prominent among the changes in the regulations is section 5 of the Reform Act (30 U.S.C. § 923(b)) which requires the Secretary to accept x-ray readings of a Board-certified or Board-eligible radiologist where

other evidence of pulmonary or respiratory impairment is present.[1]

Consequently, Elkins's contention at oral argument that the interim rules under the Black Lung Benefits Act of 1972 (20 C.F.R. §§ 410.401–410.490) are indistinguishable from the new rules under the Reform Act (20 C.F.R. §§ 727.200–727.206) is without merit. Thus, the district court properly denied Elkins's motion to order the Secretary to specify the reasons for the award of benefits under the Reform Act.

Finally, Elkins's counsel moved for the award of attorney fees. The district court denied the motion because counsel had not complied with established procedures for the award of fees under the Reform Act (20 C.F.R. §§ 725.365–725.366), and because fees are not due on the pre-Reform Act claims unless the claimant prevailed below. 42 U.S.C. § 406. We agree.

Accordingly, the judgment of the district court is Affirmed.

---

1. Under section 5 of the Reform Act, the Secretary must accept x-ray readings of Board-certified or eligible readers unless the x-ray is tainted by fraud or is of poor quality. 30 U.S.C. § 923(b); 20 C.F.R. 410.702(i). Therefore, re-reading x-rays is prohibited.

Furthermore, this Court has previously observed that the statutory scheme and legislative history of the Reform Act suggests that Congress did not intend the courts to apply this amendment retroactively on cases decided by the Secretary before the enactment of the Reform Act. *Moore v. Califano, supra,* at 732–733.