**Ballard HAYWOOD, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

No. 81–5708.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 9, 1982.

Decided Jan. 21, 1983.

Dan Rowland (argued), Prestonsburg, Ky., for plaintiff-appellant.

Joseph L. Famularo, Jr., U.S. Atty., Lexington, Ky., Holly A. Grimes (argued), [Lead Counsel], Asst. Regional Atty., Region IV, Atlanta, Ga., for defendant-appellee.

Before KEITH and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

KEITH, Circuit Judge.

This black lung action was previously heard by another panel of this Court as *Haywood v. Califano,* No. 78–3665 (6th Cir. August 19, 1980). On February 27, 1981, the action was remanded to the district court for reconsideration in light of *Miniard v. Califano,* 618 F.2d 405 (6th Cir.1980). On remand, the district court reaffirmed the denial of benefits finding that "the Secretary had reasons to deny plaintiff the [statutory] presumption." Plaintiff-appellant Ballard Haywood appeals. We reverse the judgment of the district court and remand to the Secretary for the award of benefits.

I.

Plaintiff-appellant Ballard Haywood is 66 years old, has a fourth grade education, and has never received vocational training. Haywood worked in coal mines for over 31 years. On June 15, 1972, shortness of breath and chest pains forced him to cease working. During the last several years of his employment the increasing severity of his respiratory problems prevented him from using a respirator. Haywood has not been able to work since he left the mines.[1]

Haywood complains that he is chronically short of breath. Walking short distances or up a short flight of stairs causes weakness and breathing difficulty. At nights, he has difficulty sleeping and frequently must take Tedral[2] to minimize the smothering and wheezing sensations he experiences. He also has a cough productive of dust-colored phlegm. His personal physician, Dr. Donald L. Martin, has advised Haywood not to drive a car. Haywood has been declared disabled and receives social security and workmen compensation benefits.

The medical evidence presented to the Secretary is as follows. Dr. Lowell D. Martin, a family practitioner and a certified "A" reader, examined Haywood shortly after he ceased working. His report, dated August 4, 1972, states that Haywood suffers from silicosis[3] Stage 2/2q and could

---

1. On August 10, 1972 Haywood filed his claim for black lung benefits. His claim was denied initially and upon consideration.

2. Tedral is a prescription drug and a bronchial dilator which is used to treat asthmatics and others suffering from certain severe respiratory conditions.

3. Silicosis is a disease encompassed within the definition of pneumoconiosis. *See* 20 C.F.R. § 410.401(b)(1). Pneumoconiosis, black lung, is a fibrous induration of the lungs due to irritation caused by the inhalation of dust. The

not extinguish a match held six inches from his mouth. The report recommends that Haywood not return to coal mining. In a supplemental letter, Dr. Martin stated that Haywood was totally and permanently disabled due to his pulmonary impairment. Dr. W. Linell Murphy, a certified "A" reader, and Dr. L.J. Bristol, a certified "B" reader, later reread the x-ray Dr. Martin relied upon as negative for pneumoconiosis.

On August 6, 1972, Dr. William T. Anderson of Salyersville, Kentucky examined Haywood. He diagnosed pneumoconiosis category 2/2q and concluded that Haywood was a "pulmonary cripple" incapable of performing work requiring "any physical exertion". Dr. Anderson explained that Haywood's pulmonary impairment would not only prevent him from passing the pre-employment physical for work in coal mines, but would also prevent him from obtaining other employment. Dr. Murphy later determined that the x-ray Dr. Anderson had relied upon was unreadable.

On August 7, 1972, Dr. Richard P. O'Neill, Chairman of the Division of Pulmonary Medicine, College of Medicine at the University of Kentucky, examined Haywood. His report stated that the flow velocity of the respiratory system was decreased and aeration was diminished. "The breath sounds were coarsely bronchovesicular in quality and rhonchi and expiratory wheezes were heard." Arterial blood gas studies showed "evidence of minimal arterial hypoxemia". There was no evidence of peripheral edema, cyanosis, or digital clubbing. Dr. O'Neill diagnosed: "1. Chronic obstructive airway disease—mild to moderate. 2. Chronic bronchitis. 3. Coal worker's pneumoconiosis, simple, stage 1/1 (p and q). 4. Questionable angina pectoris. 5. History of previous trauma to right shoulder with subsequent wasting of the right-shoulder girdle." Dr. Mordecai Halpern, a certified "B" reader, later reread

the x-ray relied upon by Dr. O'Neill as negative for pneumoconiosis.

On January 3, 1973, Dr. William H. Anderson, Chief of the Pulmonary Division, University of Louisville School of Medicine, examined Haywood. He determined that Haywood was vocationally disabled from working in coal mines and recommended that Haywood not expose himself to dust or silica. His diagnosis was as follows: "1) Arteriosclerotic heart disease with cardiac enlargement, paroxysmal nocturnal dyspnea, anginal pain relieved by nitroglycerine. 2) Previous injury to right shoulder. 3) Category I occupational pneumoconiosis." Dr. William H. Anderson, however, also indicated that were it not for Haywood's heart disease, he could expend the energy necessary to perform the work of an underground coal miner. Dr. Stanley Siegelman, a certified "B" reader of coal miner x-rays reread the x-ray relied upon by Dr. William H. Anderson as negative for pneumoconiosis.

On September 12, 1973, Dr. Ballard Wright conducted pulmonary function studies of Haywood. His report indicates that Haywood's maximum voluntary ventilation is *less* than the value set forth in interim regulations [4] for determining the existence of pneumoconiosis. Haywood's expiratory volume was slightly above the values set forth in the regulations.

The Secretary determined that the above evidence was not sufficient to invoke either the presumption under the interim regulations 20 C.F.R. § 410.490 or the statutory presumption under 30 U.S.C. § 921(c)(4). The Secretary found that the x-ray evidence was in "hopeless conflict", the hearing testimony and depositions diminished the significance of the physical examination reports, and the claimant's failure to present blood gas studies was a negative factor.[5] The Secretary also relied upon So-

---

most prominent symptoms are pain in the chest, cough, dypsnea, and fatigue after slight exertion. Stedman's Medical Dictionary (3rd Edition 1974).

**4.** *See* 20 C.F.R. § 410.490(b)(ii).

**5.** The Secretary erred in stating that Haywood failed to present blood gas studies. Dr. O'Neill

cial Security Ruling 73–37 to discount the significance of the pulmonary function studies.[6] Ultimately, the Secretary concluded that Haywood had not established that he suffered "from complicated pneumoconiosis as defined by the regulations." We disagree.

## II.

Pneumoconiosis is a slow progressive disease which ravages the health of coal miners. The incidence of this devastating disease is markedly higher in miners who have worked more than fifteen years. *See Hill v. Califano,* 592 F.2d 341 (6th Cir.1979). Literally thousands of miners have had their lungs riddled and their death hastened by pneumoconiosis. Countless others are alive, totally disabled, and experiencing breathing difficulties. Few states provide benefits to the unfortunate victims of pneumoconiosis. In 1969, Congress recognized the plight of coal miners. The Federal Coal Mine Health and Safety Act of 1969 ("Act"), *as amended,* 30 U.S.C. § 901 *et*

seq., was passed to "compensate miners, and the widows and children of miners, whose lives and health have been sacrificed in the production of that critical energy source— coal." S.Rep. No. 92–743, 92d Cong., 2d Sess. (1972), U.S.Code Cong. & Admin. News, p. 2305 *quoted in Morris v. Mathews,* 557 F.2d 563, 566, 570 (6th Cir.1977) and *Miniard v. Califano,* 618 F.2d 405, 410 (6th Cir.1980).

■ The Act is remedial and provides benefits to those claimants suffering from pneumoconiosis who filed before December 31, 1973.[7] The Act's two statutory presumptions provide alternative methods of demonstrating pneumoconiosis. Section 921(c)(3)[8] provides the claimant with an irrebuttable presumption of disability due to pneumoconiosis if the x-ray or autopsy yields one or more large opacities greater than one centimeter in diameter. The Act, however, is also sensitive to the difficulty of diagnosing pneumoconiosis using an x-ray or any other single medical test.[9]

performed blood gas studies which revealed that Haywood suffered from mild hypoxemia.

6. The Secretary's reliance on Social Security Ruling 73–37 is erroneous. Social Security Ruling 73–37 has been criticized on several occasions. *See, Singleton v. Califano,* 591 F.2d 383, 385 (6th Cir.1979); *Prokes v. Mathews,* 559 F.2d 1057, 1060–62 (6th Cir.1979).

7. On several occasions, this Court has indicated that the Federal Coal Mine Health and Safety Act ("Act") should be liberally construed in a manner such that all doubts are resolved in favor of the disabled miner. *See, e.g., Miniard v. Califano,* 618 F.2d 405, 410 (6th Cir.1980); *Morris v. Mathews,* 557 F.2d 563 (6th Cir.1977). More importantly, this Court is aware that the legislative history of the Act and its subsequent amendments reflect Congress's acute dissatisfaction with the manner the Secretary has administered the Act. For example, the Senate Report accompanying the 1972 Amendments to the Act expressed dismay that "the Act is not benefitting many of the nation's coal miners who Congress intended to benefit." S.Rep. No. 92–743, 92d Cong., 1st Sess. (1972) *reprinted in* 1972 U.S.Code Cong. & Admin. News, p. 2312, *quoted in Singleton v. Califano,* 591 F.2d 383, 385 n. 3 and in *Morris,* 577 F.2d at 568. Both the Secretary and the courts are obligated to interpret the Act in a manner which vindicates the purposes for which the Act was passed. *See Miniard,* 618 F.2d at 410.

8. 30 U.S.C. § 921(c)(3) states:

(3) If a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis, as the case may be.

9. Both Congress and the courts are aware that chest x-rays and ventilatory capacity tests are inaccurate techniques for diagnosing pneumoconiosis. *See Singleton,* 591 F.2d at 385, n. 3; *Morris,* 557 F.2d at 568. The Senate Report accompanying the 1972 Amendments to the Federal Coal Mine Health and Safety Act states in relevant part as follows:

"Congress recognized when the Act was being considered, however, that the chest X-

■ Section 921(c)(4) [10] provides a rebuttable presumption of total disability due to pneumoconiosis to miners who have worked fifteen years in a coal mine. However, to trigger this presumption a claimant must present "other evidence" to prove that he suffers from a totally disabling respiratory or pulmonary impairment. Other evidence includes blood gas studies, pulmonary function studies, x-ray, his age, education, medical history, and work experience. *See Miniard*, 618 F.2d at 409. Once the presumption has been triggered, the Secretary may rebut it only by showing that the claimant does not have pneumoconiosis or that the respiratory impairment did not arise out of his employment in a coal mine. 30 U.S.C. § 921(c)(4).

Claimants who cannot meet the requirements of Section 921(c)(4) may also recover under the interim regulations, 20 C.F.R. § 410.490, provided they have filed prior to July 1, 1973. Congressional prompting during the debate of the Black Lung Act of 1972 caused the Secretary to promulgate substantially more liberal interim evidentiary and disability evaluation criteria [11] for establishing pneumoconiosis. *See* 20 C.F.R. § 410.490(a). The regulations provide a rebuttable presumption of disability due to pneumoconiosis if: (1) pneumoconiosis category I or greater can be established by a chest x-ray and the impairment arose out of employment in a coal mine; (2) the miner was employed 15 years or more in a coal mine and he can meet certain ventilatory function or blood gas study values con-

ray, or roentgenogram, was an imperfect means of ascertaining the existence of pneumoconiosis in coal miners. Testimony to that effect was provided by the Surgeon General, who produced a Public Health Service study showing the existence of pneumoconiosis from autopsies performed on deceased coal miners who had, while living, been diagnosed by means of X-ray examination to be free of pneumoconiosis. For this reason, the Senate Committee report on the 1969 Act specifically referred to the need to require medical tests other than the X-ray to 'establish the extent and severity of the disease.' Many cases have come to the Committee's attention in which a miner is suffering from a severely disabling respiratory or pulmonary impairment, and yet he has no X-ray evidence of pneumoconiosis.

. Because of the continuing recognition of the fact that X-ray evidence is not always satisfactory, the Committee retained a provision of the House bill which prohibits the denial of a claim solely on the basis of the results of a chest roentgenogram. It was anticipated by Congress in 1969 that other tests to establish pneumoconiosis would be developed through research. This has not been done, and the Social Security Administration continues to rely exclusively on the results of X-ray evidence.

Testimony has further indicated that a negative X-ray is not proof positive of the absence of pneumoconiosis. Studies in addition to that of the Public Health Service confirm the existence of the disease by autopsy where a chest X-ray was negative, indicating an error of 25 percent in diagnosis."

S.Rep. 92–743, 92d Cong., 1st Sess. (1972) *reprinted in* 1972 U.S.Code Cong. & Admin.News, pp. 2313–4.

10. 30 U.S.C. § 921(c)(4) states:

(4) If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine. The provisions of this paragraph shall not apply with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981.

11. Compare 20 C.F.R. § 410.490(b)(1)(ii) with 20 C.F.R. § 410.426(b).

tained in the regulations. *See* 20 C.F.R. § 410.490(b)(i)(ii) and Appendix. These criteria establish the prima facie showing necessary to give rise to the presumption. Once the showing is made, the presumption is mandatory. The Secretary then must determine whether the evidence in the record is specific and comprehensive enough to rebut the presumption. Specifically, the Secretary must prove that the claimant is doing or is capable of doing his usual coal mine work or comparable work. *See* 20 C.F.R. § 410.490(c).

### III.

■ This Court has on several occasions addressed the issue of quantity of evidence necessary to invoke the presumption contained in regulation 410.490(b)(1)(i). The Court has held that the regulation 410.-490(b)(1)(i) presumption is triggered on two occasions. First, a certified reader's positive interpretation of a single x-ray is sufficient to trigger the rebuttable presumption. In *Dickson v. Califano,* 590 F.2d 616 (6th Cir.1978), the claimant presented a single x-ray to establish pneumoconiosis. Two physicians, one of whom was a certified reader, interpreted the x-ray as positive. Although readers employed by the Secretary later reread the x-ray as negative, the Court held that the certified reader's positive reading of the single x-ray was sufficient to invoke the rebuttable presumption contained in 20 C.F.R. § 410.490(b)(1)(i). *See also Burchett v. Mathews,* 575 F.2d 1189 (6th Cir.1978) (per curiam).

■ Second, the presumption is triggered where two examining physicians diagnose pneumoconiosis and one of the diagnosis is pneumoconiosis category 2 or greater.[12] In *Miniard v. Califano,* 618 F.2d 405 (6th Cir. 1980), the claimant presented x-ray evidence from several physicians. Although earlier x-rays had been interpreted as negative for pneumoconiosis, Drs. J. Roy Biggs and Robert B. Matheny found pneumoconiosis category 1/0 ps. Dr. H.W. Reckmann interpreted a different x-ray as evidence of pneumoconiosis category 2p. This Court held that the above evidence was sufficient to establish pneumoconiosis and trigger the presumption under regulation 410.-490(b)(1)(i). *Id.,* at 410. *See Burchett,* 575 F.2d 1189.

In the present case the Secretary contends that Haywood has not presented enough evidence to trigger either the presumption contained in 20 C.F.R. § 410.490 or 30 U.S.C. § 921(c)(4). The Secretary apparently relies on *Lawson v. Secretary of Health and Human Services,* 688 F.2d 436 (6th Cir.1982). In *Lawson* the claimant presented x-ray evidence from several physicians. X-rays taken in 1971 and 1973 were interpreted as negative for pneumoconiosis. A certified "A" reader and a second physician read two x-rays taken in 1974 as positive for pneumoconiosis. An Administrative Law Judge (ALJ) held that this was sufficient to trigger the presumption contained in regulation 410.490(b)(1)(i). The Appeals Council disagreed and had the x-rays reread by a certified "B" reader. The "B" reader found that the x-rays were either unreadable or negative for pneumoconiosis. The Appeals Council consequently reversed the decision of the ALJ. The Secretary adopted the Appeals Council's position and the district court affirmed.

■ On appeal this Court held:

We hold that a single positive x-ray establishes pneumoconiosis as a matter of law only when it is uncontradicted by prior readings. To hold otherwise would mean that a claimant could have an x-ray

---

12. *Elkins v. Secretary of Health and Human Services,* 658 F.2d 437 (6th Cir.1981) does not conflict with the holding in *Miniard.* In *Elkins* a physician read a single x-ray as indicative of pneumoconiosis category 1/1s and 2/3q. This single reading, however, was not sufficient to invoke the presumption under 20 C.F.R. § 410.-490(b)(1)(i) because the physician was not a certified reader. 658 F.2d at 439. The Court

did not consider the positive x-ray taken in 1975, two years after the deadline.

We note that under the Black Lung Benefits Reform Act of 1977, the Secretary must accept an initial x-ray reading which is positive for pneumoconiosis, in the absence of fraud. *See* Pub.L. No. 95–239, § 5(a); 92 Stat. 97 (amending 30 U.S.C. § 921 (1976)).

that has been read as negative repeatedly reread until he achieves a positive reading and that he could then invoke the presumption of § 410.490. When x-ray evidence is in conflict, it is for the Secretary to weigh the evidence to determine whether the x-rays establish pneumoconiosis. (citation omitted.)

*Id.* at 438.

We agree that a single x-ray can be sufficient to invoke the presumption contained in regulation 410.490(b)(1)(i). *See Dickson,* 590 F.2d at 616. Moreover, the Secretary may resolve conflicting interpretations of a single x-ray where it is initially read as negative for pneumoconiosis. *See Hill,* 592 F.2d 341.

■ However, the Secretary may not, as *Lawson* seems to suggest, simply declare x-rays taken on different dates to be in "conflict" and deny benefits. *Lawson* asserts that the presumption was not triggered where negative x-rays taken in 1971 and 1973 "conflicted" with 1974 x-rays which were read as positive by a certified "A" reader and a second physician. *Id.,* at 439. *Lawson* is problematic for several reasons.

First, an x-ray is merely a static portrait of an on-going dynamic process. An x-ray is a photograph of a claimant's lung field on a specific date. Pneumoconiosis, however, is a slow, *progressive* disease. Consequently, a negative diagnosis in one year is not probative of the existence of pneumoconiosis on subsequent dates. *See Singleton v. Califano,* 591 F.2d 383, 385 (6th Cir.1979). On any given date pneumoconiosis may not be detectable or may not have destroyed enough of the claimants lungs to be diagnosed as category I. The disease, nevertheless, may progress and later destroy sufficient lung tissue to be characterized as category I. Therefore, the negative diagnosis in 1971 and the subsequent positive readings in 1974 are not "conflicting". The Secretary never had an occasion to resolve "conflicting" x-ray evidence in *Lawson.* The different diagnoses are a poignant illustration of the progressive nature of pneumoconiosis.

Second, *Lawson* unfairly penalizes conscientious miners who promptly seek medical attention for their breathing problems. Clearly, miners who seek an x-ray diagnosis and medical treatment when their breathing difficulties are not acute are at a potential disadvantage should they later decide to seek black lung benefits. This Court's holdings should encourage and not create disincentives for miners to seek prompt medical attention for their breathing difficulties.

Finally, the only issue a court addresses when it determines the character of evidence needed to trigger the presumption is the requisite diagnostic certainty needed to comply with the intent of Congress. The sequence in which the positive radiological evidence occurs simply is not relevant to this inquiry. There is simply no "magic" in the sequence provided the positive diagnosis constitutes "sufficient" evidence that pneumoconiosis is present. In *Miniard v. Califano,* 618 F.2d 405 (6th Cir.1980) this Court held that although certain x-rays had been interpreted as negative for pneumoconiosis, subsequent positive radiologic evidence was sufficiently probative of pneumoconiosis that the presumption was triggered. *Id.* at 410. *See Burchett,* 575 F.2d 1189.

■ For the above reasons, the Secretary's reliance on *Lawson* is misplaced. In the present case, four physicians interpreted x-rays of Haywood as positive for pneumoconiosis. In August of 1972, Dr. Lowell D. Martin, a certified "A" reader, found silicosis stage 2/2q, Dr. William T. Anderson diagnosed pneumoconiosis stage 2/2q, Dr. Richard P. O'Neill diagnosed pneumoconiosis stage 1/1 (p and q), and Dr. William H. Anderson found pneumoconiosis category 1. Obviously, under either *Dickson* or *Miniard* Haywood is entitled to the rebuttable presumption contained in regulation 410.490(b)(1)(i). Dr. Martin's diagnosis, although later challenged by a certified "B" reader employed by the Secretary, is sufficient under *Dickson* to trigger the presumption. Moreover, the diagnosis of Dr. William T. Anderson and either Dr. William H. Anderson or Dr. Richard O'Neill would have

been enough to invoke the presumption. *See Miniard,* 618 F.2d at 410.

■ The Secretary may rebut the presumption by demonstrating that Haywood is performing or is capable of performing his usual coal mine work or comparable work. *See* 20 C.F.R. § 410.490(c). The Secretary cannot, however, rely upon negative x-rays or pulmonary function studies to rebut the presumption. *See Miniard,* 618 F.2d at 410; *Cunningham v. Califano,* 590 F.2d 635, 637 (6th Cir.1978); *Burchett,* 575 F.2d at 1191; *Lawson,* 688 F.2d at 438; *Ansel v. Weinberger,* 529 F.2d 304, 309–310 (6th Cir.1976). The x-ray evidence of Drs. Anderson, Martin, O'Neill, and Anderson was sufficient to raise the presumption. The negative readings by the "B" readers employed by the Secretary are not sufficient to rebut the presumption.

On appeal, the Secretary argues that it established that Haywood could physically work as a coal miner. The Secretary relies exclusively on Dr. William H. Anderson's testimony that Haywood could expend the energy necessary to perform the work of an underground coal miner were it not for his heart condition. The Secretary's reliance, however, is misplaced. The relevant inquiry for determining total disability is whether the claimant is vocationally disabled, not physically disabled. A claimant is totally disabled if his pneumoconiosis *prevents* him from obtaining work as a coal miner in the immediate area of his residence on July 1, 1973. Regulation § 410.-412(a) defines total disability as follows:

"A miner shall be considered totally disabled due to pneumoconiosis if: (1) His pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mine in which he previously engaged with some regularity and over a substantial period of time and (2) His impairment can be expected to ... last for a continuous period of not less than 12 months."

■ The Secretary cannot rebut the presumption of total disability unless he demonstrates that the claimant is not vocationally disabled in the immediate area around his home. The Secretary has not made such a showing in the instant case. Drs. William T. Anderson and Dr. William H. Anderson testified that Haywood's pneumoconiosis would prevent him from passing the requisite pre-employment physical for employment in a coal mine. Haywood, consequently, could not work in a coal mine in the area around David, Kentucky. This record contains additional evidence that Haywood's pulmonary condition prevented him from performing comparable work. Accordingly, Haywood has demonstrated that he is independently and totally disabled.

### IV.

The Secretary also maintains that the "other evidence" of Haywood's respiratory condition, the medical evidence and the lay testimony concerning Haywood's physical limitations, was not sufficient to trigger the rebuttable presumption of total disability due to pneumoconiosis found in 30 U.S.C. § 921(c)(4). Moreover, the Secretary asserts that this Court may not set aside its determination provided substantial evidence supports its conclusion, even if the evidence would have been viewed differently had this Court been the trier of fact. *See Moore v. Califano,* 633 F.2d 727, 729 (6th Cir.1980).

■ We agree that the Secretary's determination may not be set aside if based on substantial evidence. *E.g. Moore,* 633 F.2d at 729. The Secretary's conclusions, however, are not supported by substantial evidence where the "other evidence" was not considered in light of the manifest congressional intent under 30 U.S.C. § 921(c)(4). *See Smith,* 682 F.2d at 587; *Caraway v. Califano,* 623 F.2d 7, 11–12 (6th Cir.1980); *Cunningham,* 510 F.2d at 637; *Conn v. Harris,* 621 F.2d 228, 230 (6th Cir. 1980); *Ansel,* 529 F.2d at 309–10. Proper deference to the manifest congressional intent is demonstrated where special consideration is given the diagnosis of the treat-

ing physician and of all physicians who examine the claimant. *See Ansel*, 529 F.2d at 309–10; *Cunningham*, 510 F.2d at 637; *Conn*, 621 F.2d at 230.

A claimant's burden in demonstrating that he suffers from a totally disabling respiratory impairment is not onerous. The diagnosis of examining physicians and lay testimony concerning the claimant's physical condition, age, education and vocational training are sufficient to trigger the presumption contained in 30 U.S.C. § 921(c)(4). *See e.g., Smith*, 682 F.2d at 587; *Miniard*, 618 F.2d at 409. In *Singleton v. Califano*, 591 F.2d 383 (6th Cir.1979), for example, plaintiff testified that after working as a coal miner for 26 years he had chest pains, experienced smothering spells, had a persistent cough, had difficulty sleeping at night, and took medication to relieve his breathing problems. Two physicians who examined plaintiff reported that he suffered from pneumoconiosis category 1/0. Plaintiff's ventilatory function tests, however, were normal. This Court held that although the Secretary reread the x-rays as negative, plaintiff's testimony and the medical evidence were sufficient to trigger the presumption under 30 U.S.C. § 921(c)(4).

 In the instant case Haywood presented more than ample evidence to trigger the presumption found in 30 U.S.C. § 921(c)(4). The testimony of Haywood and the reports of the examining physicians were persuasive evidence that Haywood suffered from a totally disabling respiratory impairment. Haywood testified that he worked as a coal miner for over 31 years, had a fourth grade education, and has never received vocational training. He experiences shortness of breath, has a productive cough, has difficulty walking short distances or up stairs, and frequently must take medication to relieve the smothering and wheezing sensations he experiences at night. Dr. Lowell D. Martin's diagnosis is consistent with Haywood's testimony. Dr. Martin found silicosis category 2/2q and noted that Haywood was unable to extinguish a match held six inches from his mouth. Based on his cumulative knowledge of Haywood's condition Dr. Martin concluded that he was totally and permanently disabled and should not return to coal mining.

The diagnoses and observations of the other examining physicians support the conclusions reached by Dr. Martin. Dr. William T. Anderson diagnosed pneumoconiosis stage 2/2q and declared that Haywood was a "pulmonary cripple". Dr. Richard P. O'Neill also examined Haywood and determined that he could no longer work as a miner. Dr. O'Neill reported that arterial blood gas studies showed evidence of mild arterial hypoxemia and that the breath sounds were coarsely bronchovesicular with rhonchi and wheezing occurring. His diagnosis was chronic obstructive airway disease—mild to moderate, chronic bronchitis, and coal worker's pneumoconiosis state 1/1 (p and q). Dr. William H. Anderson found Haywood to be vocationally disabled from working in coal mines and suffering from pneumoconiosis category I. The pulmonary function study indicated Haywood met one of the two criteria for establishing pneumoconiosis under the interim regulations. Moreover, the blood gas study showed evidence of some arterial hypoxemia. In sum, the Secretary has failed to demonstrate that Haywood does not have pneumoconiosis.

## V.

On appeal the Secretary has attempted to argue that the evidence demonstrates that Haywood's disability is due primarily to heart disease and not pneumoconiosis. The Administrative Law Judge who heard the case, however, did not make an explicit finding of primary cause. *See Maddox v. Califano*, 601 F.2d 920 (6th Cir.1979). In fact, the findings of the Administrative Law Judge are equivocal on whether Haywood is disabled due to his heart condition. Drs. William T. Anderson and Lowell D. Martin, by contrast, stated unequivocally that Haywood was totally and permanently disabled due to pneumoconiosis. We hold that Haywood has demonstrated that pneu-

moconiosis caused him to be totally and permanently disabled. The Secretary may not embellish the conclusions of the Administrative Law Judge on appeal. It is not determinative that Haywood will obtain black lung and social security benefits. *See Singleton,* 591 F.2d at 385 n. 2.

Accordingly, the judgment of the district court is reversed. This action is remanded to the district court for remand to the Secretary for the payment of benefits.