870 F.2d 1407
 Florence E. MIKELS, Widow of Charles Mikels, Petitioner,
v.
DIRECTOR, OFFICE OF the WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR, As Designee of
William E. Brock, III, Secretary of
Labor, Respondent.
 No. 88-1225.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 15, 1988.
Decided March 28, 1989.
 
 I. John Rossi, Des Moines, Iowa, for petitioner.
 Brian E. Peters, Washington, D.C., for respondent.
 Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and STUART,* Senior District Judge.
 LAY, Chief Judge.
 
 
 1
 Florence Mikels is the widow of Charles Mikels (Mikels), a coal miner who died at age forty-nine on September 25, 1961. Mrs. Mikels filed for benefits on February 20, 1974, under the Black Lung Benefits Act [Act].[1] Her survivor's claim was administratively denied, and she took no further action at that time.
 
 
 2
 Following the Black Lung Benefits Reform Act of 1977,[2] Mrs. Mikels' claim was reopened. On further review, the Department of Labor determined that Mrs. Mikels was not entitled to benefits. Mrs. Mikels then requested a formal hearing, which was had on December 5, 1983. The Administrative Law Judge (ALJ) concluded that Mrs. Mikels had established her entitlement to benefits under the Act, and she began receiving those benefits. The Director of the Office of Workers' Compensation Programs for the United States Department of Labor (Director) appealed the benefits award to the Benefits Review Board (Board).
 
 
 3
 The Board reversed the ALJ's decision on December 18, 1987, holding that the record evidence was insufficient to find that the miner was totally disabled due to a respiratory impairment at the time of his death. The Board reasoned that the lay testimony insufficiently particularized the miner's job requirements. Thus, the Board found that the ALJ had no basis for comparing Mikels' physical limitations with the requirements of his usual coal mine work. The Board asserted that the ALJ's invocation of the interim presumption under 20 C.F.R. Sec. 727.203(a)(5) was therefore erroneous and that petitioner was not entitled to any benefits under the Act. This appeal followed.
 
 
 4
 The facts in evidence are not in dispute. Charles Mikels was a coal miner, born on May 1, 1912. Mikels worked as a coal digger for various periods of time between 1926[3] and 1941. The parties stipulated that during that period Mikels had worked for ten years in coal mine employment.
 
 
 5
 Other than one hospitalization for a powder burn in 1942, Mikels was never known to have seen a doctor. Mikels' daughter, Phyllis Knowles, testified that Mikels "just did not doctor"; Mrs. Mikels testified that Mikels "didn't like to go to doctors."
 
 
 6
 Mikels left the mines and worked from 1956 to 1960 driving a road grader for Appanoose County. His wife's uncontradicted testimony was that he quit that job because he was short of breath in the winter. Mikels was unemployed for a short period of time and then obtained work as a drag line operator at a strip mine in Missouri. Mrs. Mikels testified that the job, however, "was too hard a work for him." Mikels complained to his wife about his respiratory condition. Mrs. Mikels' testimony was that Mikels came home from his strip mine job "tired, wore out and short of breath." Mrs. Mikels recalled that in the two weeks preceding his death, Mikels coughed frequently, and was light-headed. Mrs. Mikels knew of no other health problems Mikels had, aside from his respiratory condition. Mikels did smoke a pipe.[4] According to Mrs. Mikels' testimony, Mikels could do very little exertional work around the house. For example, he could not mow the lawn with a push-mower, or work in the garden. Mrs. Mikels also stated that Mikels had trouble finding work after he quit his county job "[b]ecause people knew he had a breathing problem."
 
 
 7
 The testimony of Mikels' daughter corroborated that of his wife. Mrs. Knowles testified: "He was always tired and weak, short of breath. He always complained about having a breathing problem and he coughed." Mrs. Knowles further testified that Mikels acknowledged his inability to adequately perform his drag line job:
 
 
 8
 Question: Did [your father] say anything about whether the work was hard or anything of that nature?
 
 
 9
 Answer: Well, I don't know if it was real hard but he was weak and he couldn't handle it like he thought he should.
 
 
 10
 Question: Did he complain to you that it was getting him down or anything of that nature?
 
 
 11
 Answer: Yes. He was awful tired.
 
 
 12
 Official Transcript of Proceedings at 31. Mrs. Knowles also testified that several days before Mikels died, he "passed out" while sitting in a restaurant. Further, her testimony mirrored her mother's regarding Mikels' difficulty breathing and walking in cold weather. Mrs. Knowles recalled that her father's respiratory difficulties existed year round. Mrs. Knowles' conclusion was that her father had a "miner's cough."
 
 
 13
 Despite Mikels' breathing problems, Mikels worked full-time until his death. It was the opinion of both Mrs. Mikels and Mrs. Knowles that Mikels' lung problems prevented him from performing his drag line job as he should have.
 
 
 14
 Mikels died on September 25, 1961, while on the job at the strip mine. The death certificate, signed by the coroner, stated the cause of death as coronary occlusion, due to arteriosclerosis and hypertension. No autopsy was ever performed. Mrs. Knowles stated that she didn't think her father ever had arteriosclerosis or high blood pressure.
 
 Discussion
 
 15
 Our applicable standard of review is well established:
 
 
 16
 The court of appeals scrutinizes Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations. * * * The Board's function is similarly limited. It is not empowered to engage in de novo review but rather is limited to reviewing the ALJ's decision for errors of law and to determine whether the factual findings are supported by substantial evidence in the record as a whole.
 
 
 17
 Phillips v. Director, Office of Workers' Compensation Programs, 768 F.2d 982, 983-84 (8th Cir.1985) (citation omitted); Newman v. Director, Office of Workers' Compensation Programs, United States Dept. of Labor, 745 F.2d 1162, 1164 (8th Cir.1984). We must therefore determine whether the ALJ's decision awarding benefits to Mrs. Mikels is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). See also Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Padavich v. Mathews, 561 F.2d 142, 145 n. 4 (8th Cir.1977). Under this standard, if the ALJ's decision is consistent with the law and is supported by substantial evidence, "the ALJ's determination is conclusive and it is immaterial that the facts permit the drawing of diverse inferences." Logsdon v. Director, OWCP, U.S. Dept. of Labor, 853 F.2d 613, 615 (8th Cir.1988), citing Parker v. Director, Office of Workers' Compensation Programs, United States Dept. of Labor, 590 F.2d 748, 749 (8th Cir.1979).
 
 
 18
 This court has long recognized the purposes of the Black Lung Benefits Act. See Bozwich v. Mathews, 558 F.2d 475, 479 (8th Cir.1977). The Act "was passed to 'compensate miners, and the widows and children of miners, whose lives and health have been sacrificed in the production of that critical energy source--coal.' " Haywood v. Secretary of Health & Human Servs., 699 F.2d 277, 281 (6th Cir.1983) (citations omitted), abrogated on other grounds, Mullins Coal Co. of Va. v. Director, Office of Workers' Compensation Programs, United States Dept. of Labor, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987). Congress intended to resolve doubts in favor of the miner absent "definitive medical conclusions." Bozwich, 558 F.2d at 480 (footnote omitted). Accord Haywood, 699 F.2d at 281 n. 7. We review the case with these principles in mind.
 
 
 19
 In the instant case the ALJ determined that Mikels was totally disabled due to pneumoconiosis at the time of his death. Since the parties had stipulated that Mikels had worked for at least ten years as a coal miner, Mikels' widow was entitled to invoke the interim presumption under 20 C.F.R. Sec. 727.203(a) (1988). That section provides that any such miner or his survivor is allowed the presumption that the miner was totally disabled due to pneumoconiosis if one of several evidentiary standards is met. Id. Subsection (5) is in issue here. That subsection triggers the presumption if, "[i]n the case of a deceased miner where no medical evidence is available, the affidavit of the survivor of such miner or other persons with knowledge of the miner's physical condition, demonstrates the presence of a totally disabling respiratory or pulmonary impairment." 20 C.F.R. Sec. 727.203(a)(5) (1988).
 
 
 20
 Mikels had no medical history aside from a 1942 hospitalization for a powder burn. Although his death certificate was signed by a doctor and listed coronary occlusion due to arteriosclerosis and hypertension as the probable cause of death, such evidence is not relevant medical evidence for the purposes of the Act. Speculation regarding cause of death cannot be credited where the doctor had neither seen the deceased prior to death nor performed an autopsy. Hillibush v. U.S. Dept. of Labor, Benefits Review Bd., 853 F.2d 197, 204 (3d Cir.1988); see also Smakula v. Weinberger, 572 F.2d 127, 130-32 (3d Cir.1978). Cf. Farmer v. Mathews, 584 F.2d 796, 801 (6th Cir.1978) (where doctor who signed death certificate had never seen decedent before death, death certificate disclosing no awareness of lung disorder and attributing death to "probabl[e] acute myocardial infarction" was not substantial evidence that pneumoconiosis did not contribute to cause of death). The determination of whether the survivors' affidavits are sufficient to establish disability due to pneumoconiosis is essentially subjective. Felthager v. Weinberger, 529 F.2d 130, 134 (10th Cir.1976). Thus, the ALJ's decision overall must be upheld if it is according to law and supported by substantial evidence on the record as a whole. Logsdon, 853 F.2d at 615; accord Markus v. Old Ben Coal Co., 712 F.2d 322, 326 (7th Cir.1983).
 
 
 21
 Here, the ALJ obviously followed the legislative spirit in finding:
 
 
 22
 that the testimony of Mrs. Mikels and her daughter, Mrs. Knowles, is sufficient to establish the presence of a totally disabling respiratory or pulmonary impairment of Carl E. Mikels. These witnesses have used non-medical terms. The factual doubts that are present in their testimony and its interpretation have been resolved in favor of the Claimant as required. The presumption is invoked. 20 CFR [Sec.] 727.203(a)(5)[.]
 
 
 23
 Record at 46 (ALJ's Decision and Order granting benefits, June 27, 1984).
 
 
 24
 The Director argues that the ALJ's decision was erroneous. Primarily, the Director asserts that the ALJ should have first determined whether, if the lay testimony is fully credited, it is sufficient to establish the existence of a totally disabling respiratory impairment. See Kosack v. Director, OWCP, 7 Black Lung Rep. 1-248, 1-251 (Ben.Rev.Bd.1984). If this threshold test is satisfied, the Director argues that the ALJ is required to then make specific credibility findings as to each witness. Id. Based on these asserted principles, the Director argues that the lay testimony here is legally insufficient to establish the necessary pulmonary disability. The Director also urges that the claimant's evidence is insufficient to prove disability in that it does not specifically compare the physical requirements of Mikels' coal mine work with his actual capabilities. We disagree.
 
 
 25
 We begin with the admonition that "[a] claimant's burden in demonstrating that he suffers [or his decedent suffered] from a totally disabling respiratory impairment is not onerous." Haywood, 699 F.2d at 286. While it might be desirable to develop the evidence in accordance with Kosack, under the circumstances of this case such a requirement would constitute an "onerous burden," in direct contravention of Congress' intent. In this case, Mikels' death occurred years before any compensation program existed. None of the available witnesses had any reason to anticipate the need for such documentation as the Board would require here. The petitioner and her daughter testified to the best of their knowledge. Each admitted not knowing what Mikels' specific physical job requirements were. To now bar this claimant from an award of statutory benefits for the failure to anticipate the unforeseeable would be grossly inequitable. It was for the ALJ to weigh the facts in evidence, and to resolve all doubts in the claimant's favor. He has done this, according to law. After careful review of the record as a whole, we find that the ALJ's decision is supported by substantial evidence.
 
 
 26
 We address one final issue, the date of onset of benefits. The ALJ ordered the benefits to be paid to Mrs. Mikels commencing December 1, 1983. The agency regulation states in part: "in the case of a survivor of a miner who died due to or while totally disabled by pneumoconiosis, benefits shall be payable beginning with the month of the miner's death, or January 1, 1974, whichever is later." 20 C.F.R. Sec. 725.503(c) (1988). Petitioner asserts, and the Director concedes, that this is the correct rule. Accordingly, we determine that January 1, 1974, is the correct commencement date for the calculation of the benefits award.
 
 
 27
 We thus reverse the decision of the Benefits Review Board, and order that the case be remanded for entry of judgment awarding benefits to Mrs. Mikels. The award calculations shall use January 1, 1974, as the date of onset, and retroactive and continuing benefits shall be awarded, with deduction for payments already received by Mrs. Mikels. It is so ordered.
 
 
 
 *
 The HONORABLE WILLIAM C. STUART, Senior United States District Judge for the Southern District of Iowa, sitting by designation
 
 
 [1]
 Pub.L. No. 91-173, 83 Stat. 792, (codified as amended at 30 U.S.C. Secs. 901-60 (1982 & Supp.1986))
 
 
 [2]
 Pub.L. No. 95-239 (codified as amended in scattered sections of the Black Lung Benefits Act, 30 U.S.C. Secs. 901-60 (1982 & Supp.1986))
 
 
 [3]
 Mrs. Mikels' affidavit states that her husband's father took her husband out of school in the fourth grade and put him to work in the mines under the father's name (David) until her husband was old enough to work under his own name. This would have been in 1921 or 1922
 
 
 [4]
 Mrs. Mikels stated he smoked the pipe during work breaks and after supper. Mrs. Mikels thought her husband did not inhale the pipe smoke