**Verl SIGLER, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant[1].**

**No. 94–CV–74252–DT.**

United States District Court, E.D. Michigan, Southern Division.

July 10, 1995.

**1.** Pursuant to P.L. No. 103–296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 106(d) of P.L. 103–296, Shirley S. Chater, Commissioner of Social Security, should be substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. No further action need be taken to continue this suit. *Id.*

Evan A. Zagoria, Southfield, MI, for plaintiff.

Saul Green, U.S. Atty., Detroit, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

### I. INTRODUCTION

Plaintiff Verl Sigler appeals from the Secretary's final decision denying his application for disability insurance benefits. Currently before this Court are the parties' Cross–Motions for Summary Judgment. The motions were referred to United States Magistrate Judge Thomas A. Carlson ("the MJ") for a Report and Recommendation ("R & R").

In the R & R the MJ recommended that the Secretary's decision be affirmed and that the Plaintiff's motion be denied. Timely objections to the R & R were filed by the Plaintiff. Defendant has filed a response.

After reviewing the motions, the Court file, the R & R, the Plaintiff's objections, and the Defendant's response, this Court concludes that substantial evidence does not exist in the record to support the decision of the Secretary. This Court does not adopt the MJ's R & R. Accordingly, Plaintiff's motion will be GRANTED, and Defendant's motion will be DENIED.

### II. BACKGROUND

#### A. Procedural History

On December 1, 1992, Plaintiff filed an application for Social Security disability insurance benefits, alleging that as of June 12, 1990, he was unable to work due to severe back pain. The Secretary denied benefits both initially, and again upon reconsideration. On March 9, 1994, Administrative Law Judge John W. Hoffman ("the ALJ"), held a *de novo* hearing. The ALJ found that Plaintiff was unable to return to his past work, but that Plaintiff retained the residual functional capacity to perform sedentary work activity that provides for a sit-stand option. The Appeals Council declined to review the decision and Plaintiff commenced an action for judicial review of the denial of benefits. This

court referred the case to the MJ, who concurred with the ALJ. The MJ found that the Secretary's decision to deny benefits was within the range of discretion allowed by law and that insufficient evidence existed to find otherwise.

### B. Factual History

At the time of the hearing Plaintiff was a 49 year old high school graduate, and had been employed for over 20 years as a "tie down person," wherein he prepared automobiles for shipment by railroad (TR 75–85). This position required him to stand and walk for eight hours a day, to constantly bend and reach, and to lift over 100 pounds (TR 76–86).

The Plaintiff testified that he originally injured his lower back at work in June, 1990, and had torn a muscle in his shoulder just prior to that time (TR 33, 37). His treating physician, Dr. Baghdoian, reported in February, 1991, that Plaintiff's back and shoulder pain kept him from lifting more than five pounds, walking, standing, climbing or working on ladders (TR 148–149). The Plaintiff's work status was listed as light duty with some restrictions (TR 150). When the back pain persisted despite physical therapy, Plaintiff underwent a laminectomy, in August, 1991 (TR 98, 156–158). In February and again in April, 1992, Dr. Baghdoian recommended a post-operative work hardening and functional capacity evaluation program, and stated that a restricted work status may be possible (TR 101, 104). He also stated that full disability may be necessary should these treatments fail (TR 102, 104).

One year after surgery, when the Plaintiff's complaints of back and leg pain persisted, Dr. Baghdoian recommended full disability. He referred the Plaintiff to the University of Michigan Medical Center for evaluation (TR 107).

Neurologists at U. of M. examined the Plaintiff in January, 1993, and found "evidence of a chronic, moderate to sever [sic] right L5 radiculopathy with reinnervation of the proximal L5 muscles" (TR 112). They found no displacement or impingement of the nerve root, and further felt that the Plaintiff's "problem" was not a result of radiculopathy, but arose from a mechanical back problem (TR 112). In his deposition, Dr. Baghdoian stated that Plaintiff was currently suffering from "post laminectomy syndrome with chronic pain and lumbosacral strain" (TR 175). Additionally, he stated that the Plaintiff could not spend more than one to two hours out of an eight hour day sitting or standing (TR 192).

The Plaintiff testified that he currently sits, stands or walks from 9 o'clock each morning until 7 o'clock each night, but primarily sits. From 7 o'clock until 3 o'clock in the morning he usually lays on the couch, and then retires to bed (TR 41–44). When asked to estimate how long out of an eight hour day he could walk, stand or sit, Plaintiff estimated a half-hour of walking, a half-hour to an hour of standing, and an hour of sitting followed by another hour of sitting if a break for walking in between were allowed (TR 35).

A vocational expert testified that if the Plaintiff's testimony on his estimated abilities were accepted fully, the Plaintiff would not be employable (TR 54–55). However, if the Plaintiff were able to, in an eight hour day, stand one hour, sit six hours, and walk one hour, the Plaintiff would be capable of performing restricted sedentary work if it allowed a sit-stand option. He further estimated that 7,500 of these jobs existed in the area (TR 53–54).

### III. DISCUSSION

#### A. Standard of Review

As the Sixth Circuit has recognized on numerous occasions:

> The standard of review in Social Security cases is well established; the Secretary's findings "are not to be overturned unless there is no substantial evidence supporting such conclusions." *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 535 (6th Cir.1981). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401 [91 S.Ct. 1420, 1427, 28 L.Ed.2d 842] (1971) (citing *Consolidated Edison Co. v. NLRB,* 305 U.S. 197 [59 S.Ct. 206, 83 L.Ed. 126] (1938); *Landsaw v. Secretary of Health and Human Ser-*

*vices,* 803 F.2d 211, 213 (6th Cir.1986)). It is more than a mere scintilla, but only that much evidence required to prevent a directed verdict. *NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 [59 S.Ct. 501, 505, 83 L.Ed. 660] (1939). This Court "may not try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984). Rather, "[i]f the Secretary's findings are supported by substantial evidence then we must affirm the Secretary's decision even though as triers of fact we might have arrived at a different result." *Elkins v. Secretary of Health and Human Services,* 658 F.2d 437, 439 (6th Cir.1981).

*Foster v. Bowen,* 853 F.2d 483, 486 (6th Cir.1988).

### B. Plaintiff's Objections

The Plaintiff has filed numerous objections to the findings of the ALJ and the MJ. These objections fall primarily into two categories: the MJ incorrectly interpreted medical evidence, and the MJ incorrectly applied Social Security Rulings.

### C. Discussion

#### 1. Incorrectly Interpreted Medical Evidence

■ Plaintiff objects to the MJ's characterization of Dr. Baghdoian's written comments concerning the Plaintiff's expected recovery. The MJ stated, "Dr. Baghdoian suggested that these symptoms would gradually dissipate after a physical therapy and a work hardening program (TR 164–165)." R & R at 4.

Examination of the record reveals that this interpretation of the doctor's comments is overstated. In the pertinent written recommendation Dr. Baghdoian stated, "[c]ontinue the physical therapy ... pending resolution of symptoms, might consider vocational rehabilitation versus retirement status" (TR 164). And then later, "[c]ontinue physical therapy ... work status deferred pending resolution of symptoms. Once the patient is more resolved, might consider a vocation rehabilitation program ..." (TR 165). Dr. Baghdoian did not state that he felt that the Plaintiff's

symptoms would subside after physical therapy, he simply advised physical therapy in the belief that it could help (TR 164–165). The MJ's depiction of these comments was therefore overstated.

■ Additionally, Plaintiff claims that the MJ was misleading in stating that, "[b]y March 1992, Plaintiff was no longer experiencing any back pain (TR 125)". R & R at 4.

The record states that after the second of the Plaintiff's epidural block injections, "[t]he patient was noted at that time to have almost complete pain relief although he states now it was not total relief. The patient has subsequently said the pain returned even worse than before and that he now has a pain level of 7–8/10" (TR 125). The purpose of an epidural block is to block the signals which the brain registers as pain. It is not an indication of partial recovery or of long-term relief when the pain is relieved in this way (TR 187). To interpret the plaintiff's temporary pain relief as partial recovery is not entirely correct.

■ A further objection to the MJ's interpretation of the medical testimony and evidence concerns the fact that the MJ noted that, prior to his deposition, the treating physician never indicated in writing any recommendation that the Plaintiff lay down for portions of his day, nor that the Plaintiff was restricted in sitting. The Plaintiff feels that, after noting this, the MJ improperly discounted the later testimony of Dr. Baghdoian.

A review of Dr. Baghdoian's written treatment/progress evaluations does not reveal any indication that the Plaintiff was restricted from sitting in any way. However, the court notes that these reports were prepared for submission to the Liberty Mutual Insurance Company, for the purpose of supporting Plaintiff's continued work disability status from a job that did not involve sitting. To read into these reports that Dr. Baghdoian felt that the Plaintiff had no restrictions on remaining seated, simply because the treating physician felt no compulsion to state such a restriction in the reports, essentially creates a conflict in testimony where none exists.

## 2. Incorrectly applied Social Security Rulings

■ Plaintiff objects to the lack of weight given to Dr. Baghdoian's sworn testimony that Plaintiff could not engage in sedentary work. He points to Social Security regulations which provide that "controlling weight" should be afforded to a treating physician's medical opinion if such opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence ..." 20 CFR Section 404.1527(d)(2).

■ An examination of the clinical and laboratory evaluations of both Dr. Baghdoian and the U of M Department of Neurology reveals that there is a consensus that the Plaintiff is suffering from non-operable mechanical back problems, an L5 radiculopathy and chronic pain. While the neurologists did not feel that the radiculopathy was the source of the Plaintiff's pain since no nerve root impingement was detected, Dr. Baghdoian performed a visual inspection of the condition during the laminectomy surgery and subsequently determined that the radiculopathy was a contributing factor, due to the slight bulging of the disc surface and compression of the nerve root (TR 179–80). Regardless of the source of the pain, mechanical back problems or radiculopathy, the medical experts are in agreement that the Plaintiff's pain is chronic. Therefore, the court finds that the treating physician's testimony is supported by the clinical diagnostic tests performed, and that the ALJ erred in failing to give substantial deference to the treating physician's opinion.

Finally, the Plaintiff argues that the MJ should have found that the ALJ's findings of fact resulted from the application of an improper standard of law. He refers to the two-pronged test set out in 56 Fed.Reg. 57928, *et seq.* (November 14, 1991); 20 CFR Section 404.1529. Therein, the first prong requires that a medically determinable impairment be identified which could produce the pain, and the second prong requires that allegations about the intensity and persistence of such pain be considered in evaluating the extent of incapacity. Plaintiff points out that the ALJ failed to address each of these prongs individually.

The first prong of the prescribed test addresses the need to evaluate the objective medical evidence of injury. In looking at the ALJ's Decision it is clear that the ALJ considered the findings of the medical personnel who had evaluated the Plaintiff after his injury (Decision at 3–5). The ALJ found that the Plaintiff *was disabled* from performing in his former work capacity (Decision at 7), and that the Plaintiff's RFC *was reduced* (Decision at 7–8). Further, "medically determinable" injuries were identified by stating generally that "the claimant has severe back and right arm conditions" (Decision at 7). The first prong of the test, that "medically determinable impairment" be identified, was therefore met.

■ The second prong, that allegations about the intensity and persistence of the pain be considered in evaluating the extent of incapacity, speaks to the tribunal's concerns with evaluating subjective measures of pain when determining the RFC. The ALJ specifically discounted the Plaintiff's credibility as to his stated ability to refrain from laying down during the course of the day (Decision at 5–6). Dr. Baghdoian did not dispute the Plaintiff's reports of pain, nor did the physicians at the U of M Department of Neurosurgery. The pain was consistently described as chronic. The medical reports, if read sequentially, speak of long-term, progressive and debilitating back and leg pain which did not respond to treatment. The Plaintiff was prescribed Talwin and Tylenol for pain experienced while the Plaintiff was living, by his own testimony, a sedentary life style. He stated that the pain became unbearable, interfering with his ability to sit, stand, walk, and sleep. While the ALJ addressed both the objective medical testimony and the subjective testimony by the Plaintiff, he failed to note that there was no discrepancy between the two. Instead the ALJ substituted his own opinion over that of the medical experts. The ALJ did not address his weighing of the medical testimony in a "discussion reasonably consistent with the medical testimony," as required by Social Security Ruling 88–13 and 20 CFR Section 404.1529

(Decision at 5). The ALJ discussed in detail the weight he applied to Dr. Baghdoian's sworn statement, and gave his reasons for discounting it. However, as previously discussed, the discrepancy the ALJ noted in the medical testimony was not substantial, and resulted in weighting the ALJ's opinion more strongly than that of the treating physician and clinical experts. It is consequently evident that the ALJ failed to meet the requirements of 20 CFR Section 404.1529.

## IV. CONCLUSION

In light of the above analysis, this Court finds that there was not substantial evidence in the record to support the ALJ's determination and the Secretary's findings in this matter. Accordingly, this court is unable to adopt the Report and Recommendation of the Magistrate Judge.

Therefore, IT IS ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED and that Defendant's Motion for Summary Judgment is DENIED. Accordingly, this case is to be REMANDED to the ALJ for a determination of benefits.

IT IS SO ORDERED.