**Shonda KIDD, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, Defendant–Appellee.**

**No. 99–6481.**

United States Court of Appeals, Sixth Circuit.

March 27, 2001.

Before KRUPANSKY, BATCHELDER, and GILMAN, Circuit Judges.

KRUPANSKY, Circuit Judge.

Plaintiff–Appellant Shonda Kidd appeals the lower court's awarding of summary judgment to Defendant–Appellee Commissioner of Social Security. The district court affirmed an Administrative Law Judge's finding that Kidd was not disabled within the meaning of the Social Security Act as being supported by substantial evidence in the record.

Kidd is twenty-nine years old, having been born on August 11, 1971. She has been variously diagnosed with right-eye blindness, personality disorder, exogenous obesity, and borderline intellectual functioning. At the age of eight, she filed her first application for supplemental security income on February 29, 1980. It was denied, but the denial notice is not in her file. She filed her second application at the age of fifteen on November 25, 1986. It was denied as well, with no request for reconsideration.

These denials were vacated in 1991 pursuant to the Supreme Court's decision in *Sullivan v. Zebly*, 493 U.S. 521, 110 S.Ct.

885, 107 L.Ed.2d 967 (1990), which held that "the Secretary's regulations and rulings implementing the child-disability statute simply do not carry out the statutory requirement that SSI benefits shall be provided to children with 'any . . . impairment of comparable severity' to an impairment that would make an adult 'unable to engage in any substantial gainful activity.' *Id* at 541" (quoting 42 U.S.C. § 1382c(a)(3)(A) (1982 ed.)). In addition to requesting an additional review of the previous two applications, Kidd, then twenty years old, filed a third application for supplemental security income. The applications were denied by the Social Security Administration ("SSA") initially and on reconsideration.

Kidd requested review of the denials by an Administrative Law Judge ("ALJ"), before whom hearings were held on March 26, 1993 and May 27, 1993. The ALJ denied the claims on December 10, 1993, finding that Kidd did not suffer from a disability at any time. On December 20, 1993, Kidd appealed the ALJ's decision to the Appeals Council. On May 19, 1994, the Appeals Council vacated the ALJ's findings and remanded the matter, concluding that the ALJ had made inconsistent findings: "The decision indicates that, among other impairments, the claimant is blind in the right eye due to a congenital optic nerve defect and is unable to perform work requiring binocular vision. However, in decisional finding number 9, the claimant is found to have the residual functional capacity for a full range of medium work."

On remand, the ALJ conducted hearings in the matter on August 30, 1994 and March 17, 1995. The ALJ again rendered an unfavorable decision on August 9, 1995, making the following findings of fact:

1. The claimant has never engaged in substantial gainful activity.

2. The claimant has had "severe" blindness in her right eye, borderline intellectual functioning and a personality disorder, but she has not had an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 [which lists impairments that qualify an individual as "disabled" for purposes of the Social Security Act].

3. The subjective allegations of the claimant and her mother (including those of pain) were not sufficiently credible to support a finding of statutory disability.

4. Since attaining age eighteen, the claimant has been able to perform medium exertional work involving simple instructions and little social interaction, and which does not involve depth perception, close visual work or hazardous environments.[1]

5. Prior to attaining age eighteen, the claimant was moderately impaired in her cognitive and social domains, had a mild impairment of her ability to maintain concentration, persistence and pace and had no limitation in her communication, motor, and personal/behavioral functions.

6. The claimant has no past relevant work.

7. The claimant was, at the beginning of the period relevant to this decision, eight years old, and is presently twenty-three years old.

8. The claimant has a twelfth grade education.

---

1. Kidd has a right retina that did not develop at birth and a personality disorder limiting her self-consciousness and maturity. Kidd is also "exogenously obese," which is the condition of obesity due to overeating. She has an I.Q. of 74.

9. Based on an exertional capacity for medium work and the claimant's age, education, and work experience, Rule 203.28 of 20 C.F.R. Part 404, Subpart P, Appendix 1 would direct a condition of "not disabled" since the time the claimant attained age eighteen.

10. Using the above cited Rule as a framework for decision making, there are a significant number of jobs in the national economy which the claimant can perform. Examples of such jobs are: laboratory equipment cleaner, canteen operator, advertising material distributor, and coat/hat checker.

11. The combined and cumulative impact of the claimant's impairments before the age of eighteen was not of comparable severity as would preclude work by an adult.

12. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

The Appeals Council denied Kidd's request for review on October 1, 1997, leaving the ALJ's decision as the Commissioner's final word on the matter.

On December 8, 1997, Kidd filed a complaint in the Middle District of Tennessee, asserting that, among other things, the ALJ's findings were not supported by substantial evidence. On April 22, 1998, Kidd filed a motion for summary judgment. On May 27, 1998, the SSA filed a cross-motion for summary judgment. The matter was referred to a United States Magistrate Judge Joe B. Brown, who submitted a report and recommendation on July 19, 1999, suggesting that the ALJ be affirmed in all respects but one: the case should be remanded to the SSA to determine whether Kidd's combined impairments at the time of her adult application equaled listing 12.05(c) ("Mental retardation"). On

August 25, 1999, the district court rejected the remand recommendation, awarded summary judgment to the Commissioner, affirming the ALJ in all respects. The district court indicated that a review of the ALJ's findings demonstrated that the ALJ made an equivalency determination, stating that "it is obvious that the [ALJ] considered the cumulative effect of Plaintiff's impairments, including her 74–75 IQ, her blind eye, and her psychological problems. A further remand is unnecessary." On October 21, 1999, Kidd timely filed her notice of appeal.

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g); *see also Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). " '[S]ubstantial evidence' [is] 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Our limited judicial review of this matter does not involve making credibility determinations or weighing the evidence. *See Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir.1988) ("This court 'may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility.' " (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984))). "Rather, '[i]f the Secretary's findings are supported by substantial evidence then we must affirm the Secretary's decision even though as triers of fact we might have arrived at a different result.' " *Id.* (quoting *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir .1981)).

Kidd is entitled to supplemental security income if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months", 42 U.S.C. § 1382c(a)(3)(A), and if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Since Kidd was under the age of eighteen at the time of her 1980 and 1986 applications, special rules for that evaluation process apply. *See* 20 C.F.R. § 416.924. First, if the child was doing work that is considered substantial gainful activity, the child would not be found disabled and benefits would be denied. *See* 20 C.F.R. § 416.924(c). Second, if the child was not working, the ALJ was required to determine if the alleged impairment was severe, and "whether it cause[d] more than a minimal limitation in [the child's] ability to function in an age-appropriate manner." 20 C.F.R. § 416.924(d). If the impairment was not severe, the child was not disabled and benefits would be denied. *See id.* If the impairment was severe, the ALJ was required to determine if the impairment met or equaled in severity any of the impairments listed in Appendix 1, subpart P, 20 C.F.R. § 404 ("Appendix 1"). *See* 20 C.F.R. § 416.924(e). If the impairment met or was equaled in

severity with any listed impairment, the child would be considered disabled and thus eligible for benefits. *See id.* If the impairment did not meet or equal the severity of a listed impairment, a fifth step, called an "individualized assessment," [2] would be applied to determine if the child was disabled, that is "whether [the child] has an impairment(s) of comparable severity to an impairment(s) that would prevent an adult from engaging in substantial gainful activity" and "whether the impairment meets a duration requirement." *See* 20 C.F.R. § 416.924(f). It is this last step which Kidd asserts the ALJ failed to execute.

Since Kidd was an adult at the time of her 1991 application, 20 C.F.R. § 404.1520 dictates the following analysis:

[1.] If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.

＊ ＊ ＊ ＊ ＊ ＊

[2.] If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

＊ ＊ ＊ ＊ ＊ ＊

[3.] If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s), we will find you

---

**2.** The individualized functional assessment was abolished by Congress in 1996, but, because the 1980 and 1986 applications were submitted before its repeal, it remains pertinent to the instant case. *See* Pub.L. No. 104–193, 10 Stat. 2105. It demands an evaluation of the claimant's capacities with respect to

five functional domains: cognitive, communicative, motor, social, and personal/behavioral functions, as well as the areas of concentration, persistence, and pace in the completion of age-appropriate tasks. *See* 20 C.F.R. § 416.924e(c)(2) (1995).

disabled without considering your age, education, and work experience.

\* \* \* \* \* \*

[4.] If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

\* \* \* \* \* \*

[5.] If you cannot do any work you have done in the past because you have a severe impairment(s), we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we will find you disabled.

20 C.F.R. § 404.1520. The claimant has evidentiary burden to prove the first four steps. *See Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980). However, the burden shifts to the Commissioner to demonstrate that sufficient jobs exist in the national economy which the claimant could perform. *See id.* Kidd takes issue with the ALJ's analysis at the third and fifth steps of the evaluation process.

■■■■ Kidd has challenged the medical equivalence findings of the ALJ with respect to all three of her applications for benefits. Addressing the 1980 and 1986 applications for benefits, Kidd argues that the ALJ should have determined that her impairments met or equaled a listed impairment, 112.05D, ("Mental Retardation"). Listing 112.05 provides:

> 112.05 Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning. The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.

A. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02;

B. Mental incapacity evidenced by dependence upon others for personal needs (grossly in excess of age-appropriate dependence) and inability to follow directions such that the use of standardized measures of intellectual functioning is precluded;

C. A valid verbal, performance, or full scale IQ of 59 or less;

D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant limitation of function;

E. A valid verbal, performance, or full scale IQ of 60 through 70 and:

1. For older infants and toddlers (age 1 to attainment of age 3), resulting in attainment of development or function generally acquired by children no more than two-thirds of the child's chronological age in either paragraphs B1a or B1c of 112.02; or

2. For children (age 3 to attainment of age 18), resulting in at least one of paragraphs B2b or B2c or B2d of 112.02;

F. Select the appropriate age group:

1. For older infants and toddlers (age 1 to attainment of age 3), resulting in attainment of development or function generally acquired by children no more than two-thirds of the child's chronological age in paragraph B1b of 112.02, and a physical or other mental impairment imposing additional and significant limitations of function;

2. For children (age 3 to attainment of age 18), resulting in the satisfaction of 112.02B2a, and a physical or other mental impairment imposing additional and significant limitations of function

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05. Kidd argues that while she does not meet listing 112.05(d) (she had an IQ of 74), her impairments considered in combination would equal that listing. Kidd contends that this case should be remanded pursuant to *Nash v. Secretary of Health & Human Services,* No. 94–5376 (6th Cir. June 15, 1995) (directing under circumstances where claimant's impairments equaled the mental retardation listing when claimant missed cutoff by one IQ point and had at least two other severe impairments, the claimant's application should be remanded). To begin with, unpublished authority is without precedential value. *See* 6th Cir. Rule 28(g) ("Citation of unpublished decisions in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case."). In any event, *Nash* rests on the proposition that the reviewing court should not have to "speculate" as to the relevant analysis when the ALJ has made an apparently conclusory finding of no medical equivalence; rather, the agency should have an opportunity to make the initial determination itself on remand. *See Nash,* slip op. at 2. In contrast with *Nash,* no speculation is necessary in this case. At the time of her 1980 and 1986 applications, Kidd had only one severe impairment-right-eye blindness. Kidd also charges that the case should have been remanded to the ALJ to determine if she suffered from extreme obesity as well. In addition to providing no evidence that she was obese before the age of eighteen-an issue for which she has the burden of proof, *see Allen,* 613 F.2d at

145, in a colloquy with her own counsel, Kidd unwittingly provided evidence during the hearing on August 30, 1994 which demonstrated that she was not in fact obese before leaving high school:

Q: At some point I saw a notation that you were 110 pounds in—when you were still in school, and your current weight, I believe is about 120, and your current rate is around 210. Any thoughts or feelings about the weight gain and how it could have been avoided or what you need to do now or anything? What can you share about that?

A: Well, in school I was exercising regularly in school, but I—during the point of when I got out of school, I wasn't thinking about my weight or anything like that.

Because speculation is unnecessary and substantial evidence supports the ALJ's determination, remand is inappropriate.

 Kidd advances a similar argument as to her 1991 application. She contends that while she did not meet the adult listing 12.05(c), she had a combination of impairments which equal it in severity. Listing 12.05 provides:

12.05 Mental Retardation and Autism: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22). . . . The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

B. A valid verbal, performance, or full scale IQ of 59 or less;

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work related limitation of function;

D. A valid verbal, performance, or full scale IQ of 60 through 70, or in the case of autism, gross deficits of social and communicative skills, with either condition resulting in two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Again, Kidd argues for remand in light of *Nash* because the ALJ, while finding that Kidd has no impairments which when considered in combination would equal an applicable listing, did not discuss the basis for this finding in his opinion other than in a conclusory fashion. In contrast with the 1980 and 1986 applications, Kidd was diagnosed on September 3, 1992, with exogenous obesity by Dr. Davis. However, failing to meet her burden of proof, Kidd did not provide any evidence that her obesity constitutes a severe impairment.[3] See 20 C.F.R. § 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."[4]). Again, this court need not "speculate" to deny Kidd's

---

**3.** While she does not claim that she does meet it, Kidd clearly does not meet Listing 9.09 ("Obesity") which was in effect at the time:

9.09 Obesity. Weight equal to or greater than the values specified in Table I for males, Table II for females (100 percent above desired level), and one of the following:

A. History of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine (on physical examination) associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine; or

B. Hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg measured with appropriate size cuff; or

C. History of congestive heart failure manifested by past evidence of vascular congestion such as hepatomegaly, peripheral or pulmonary edema; or

D. Chronic venous insufficiency with superficial varicosities in a lower extremity with pain on weight bearing and persistent edema; or

E. Respiratory disease with total forced vital capacity equal to or less than 2.0 L. or a level of hypoxemia at rest equal to or less than the values specified in Table III–A or III–B or III–C.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.09 (1995). Table II indicates that, as a threshold matter, a weight between 242 and 250 pounds would be required for a finding of disability for a claimant of Kidd's height (62.5 inches tall). At the time of her examination by Dr. Davis, she weighed 197 pounds, far beneath that number. Moreover, there is no evidence that she suffers from any of the requisite conditions listed above.

**4.** Basic work activities is defined by the social security regulations as follows:

When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—

request for a remand. Listing 12.05(c) requires an IQ between 60 and 70 and a severe impairment to merit a finding of disability. Kidd has an IQ of 74 and one severe impairment. If she could demonstrate that she had additional severe impairments (as did the claimant in *Nash*) in order to counterbalance her higher IQ, remand may have been appropriate to determine medical equivalence. However, because she doesn't have additional impairments which could offset the higher IQ and substantial evidence supports the ALJ's determination of a lack of medical equivalence, remand is unnecessary and inappropriate.

■ Kidd also challenges the ALJ's step five finding with respect to her 1991 application, namely, that sufficient jobs existed in the national economy which she could perform. Specifically, she challenged finding no.10, where the ALJ concluded that "[u]sing [Rule 203.28 of 20 C.F.R. Part 404, Subpart P, Appendix 1] as a framework for decisionmaking, there are a significant number of jobs in the national economy which the claimant can perform. Examples of such jobs are: laboratory equipment cleaner, canteen operator, advertising material distributor, and coat/hat checker." Kidd argues that she is unable to perform these jobs. First, she argues that, with respect to the canteen operator (242,000 jobs nationally) and check room attendant jobs (232,000 jobs nationally), the vocational expert indicated at the hearing that Kidd could not do these jobs. While the vocational expert expressed reservations about Kidd's ability to these jobs at the outset of her testimony,[5] the vocational expert indicated later in her testimony that Kidd could indeed perform these two jobs as well, after being confronted with a hypothetical put to her by the ALJ which was based on facts he found (and we find to be based upon substantial evidence in the record). *See Varley v. Secretary of Health and Human Serv's*, 820 F.2d 777, 779 (6th Cir.1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984)).

Second, Kidd argues that the other two jobs-advertising material distributor (236,-000) and laboratory equipment cleaner (2,500,000 jobs nationally)[6]-are also jobs

---

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

**5.** The vocational expert's confusion resulted from watching Kidd's testimony before testifying herself. She mistakenly thought that Kidd would be subject to limitations which would eliminate these jobs from consideration. Later, when the ALJ clarified the matter, she retracted her earlier rejection of those jobs.

**6.** Kidd argues that the vocational expert's testimony should be disregarded because it was wildly unreliable. Kidd bases this contention on the vocational expert's assertion that there were two-and-a-half million laboratory equipment cleaners in the national economy. Kidd points to evidence that the number must be less than one-million. It is certainly possible that the vocational expert made a mistake in her testimony (as the number proffered is out of proportion to the other three jobs discussed); however, even if the number were as low as one-hundred thousand, the overall number of jobs in terms of the four positions discussed would substantially support a finding of a significant number of jobs in the national economy which Kidd could perform.

which she cannot perform. As to the job of distributing advertising materials, Kidd argues that she was found to be able to work only in jobs requiring little social interaction. However, the ALJ asked the vocational expert to consider Kidd to have a "fair ability to deal with the public" and "a fair ability to relate to coworkers." The distribution of advertising materials does not require more than that. As to the laboratory equipment cleaner position, Kidd argues that she suffers from right-eye blindness thereby precluding her from working in a position that may require use of detergents or acids. The *Dictionary of Occupational Titles* indicates that while detergents or acids may be used during performance of tasks related to this position, visual acuity need not be high. The vocational expert was made specifically aware that Kidd suffered from right eye blindness and had good vision in only one eye; in response, the vocational expert indicated that this was a position which Kidd could perform. In addition, Kidd admitted during the hearing that she assisted her mother in household cleaning tasks.

Because the ALJ's decision is supported by substantial evidence in the record, the district court's judgment is AFFIRMED.